UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CHAN JAGO JOHN,

Petitioner,

v.

CURTIS J. ALJETS, District Director of the Immigration and Naturalization Service,

Respondent.

CIVIL NO. 01-57 (DSD/JMM)

REPORT AND RECOMMENDATION

The above matter is before the Court on a Petition for Writ of Habeas Corpus under 28 U.S.C. §2241 [Docket No. 1]. The matter is before the undersigned Magistrate Judge for a Report and Recommendation to the District Court pursuant to the provisions of 28 U.S.C. §636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that the matter be remanded to Respondent for prompt consideration under the standard set forth in Zadvydas v. Davis, – S.Ct. –, 2001 WL 720662 (June 28, 2001).

**FINDINGS OF FACT/REPORT**

The primary question presented by this case is whether a resident alien may be detained indefinitely pending his removal from the United States. Because the Supreme Court has recently set forth new standards for reviewing the propriety of such pre-removal detention, we are recommending that this matter be remanded for consideration under those new standards.

**Facts and Procedural History**

Petitioner is a native of Sudan. He became a permanent resident of the United States in 1996 after entering the country from a Kenyan refugee camp. While in

FILED JUL 25 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the United States, Petitioner has been convicted of multiple crimes, including Contributing to the Delinquency of a Minor. In 1997, Petitioner was convicted of theft and incarcerated.

Petitioner served the full criminal sentence imposed for his theft conviction. Upon his release from prison on March 23, 1998, Petitioner was taken into custody by the Immigration and Naturalization Service ("INS") pursuant to 8 U.S.C. §1226(c), which mandates that the Government take into custody deportable aliens who have committed aggravated felonies but have not received a final removal order. He is currently being held at the Minnesota Correctional Facility at Rush City.

Petitioner was ordered removed to Sudan on May 28, 1998 pursuant to federal statutes allowing for the deportation of aliens who commit certain crimes. He applied to an Immigration Judge for withholding of removal pursuant to 8 U.S.C. §1231(b)(3), and was denied. Petitioner appealed the denial to the Board of Immigration Appeals ("BIA"), which affirmed the lower court's decision. However, the BIA noted that Petitioner could move to reopen his case to apply for protection under the Convention Against Torture (the "Convention"). Petitioner made such a motion, and the BIA reopened his case and remanded it back to an Immigration Judge.

On September 28, 2000, an Immigration Judge granted Petitioner a deferral of removal to Sudan under Article 3 of the Convention. In accordance with that Article of the Convention, an alien will not be removed from the United States to a country where he is more likely than not to be tortured. See 8 C.F.R. §208.17(a). The Immigration Judge's Order stated that Petitioner was to be removed from the United States to any country other than Sudan. See Resp. Ex. I. As a result of the September 28, 2000 ruling, Petitioner may not be sent to Sudan unless either (a) Petitioner makes a knowing and voluntary request that the deferral be terminated, or (b) the INS moves to reopen the case and an

Immigration Judge determines, after a hearing, that Petitioner is not more likely than not to be tortured if returned to Sudan. See 8 C.F.R. §208.17(d)-(e). Petitioner may be removed to any other country that is willing to accept him, but there does not appear to be another country that will accept him. See 8 C.F.R. §208.17(b)(2).

The INS considered the Order of September 28, 2000 to be Petitioner's final removal order.[1] Once the final removal order was issued, the authority for Petitioner's detention became 8 U.S.C. §1231(a)(2), which provides for INS detention during a 90-day removal period. Once the 90 days had passed, the authority for Petitioner's detention became 8 U.S.C. §1231(a)(6), which permits detention beyond the 90-day removal period in certain cases. Section 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

It is not clear from the information submitted to the Court how the INS justified its initial detention of Petitioner under §1231(a)(6). However, the INS has provided the Court with a report describing a review of Petitioner's detention that took place on December 11, 2000. Resp. Ex. J. After interviewing Petitioner, the INS concluded that Petitioner was "a continued threat to the community" based upon his prior convictions and his behavior while incarcerated. Therefore, based upon INS regulations, the INS decided

---

[1] Petitioner actually received two removal orders, one on March 25, 1999 and one on September 28, 2000. For purposes of his Petition, the Court need not resolve the question of which of these should be considered Petitioner's "final" removal order, because our conclusion would be the same regardless of which order qualifies as "final."

to continue to detain Petitioner pursuant to §1231(a)(6). There does not appear to be a procedure in place for direct appeal from the decision to detain an alien pursuant to §1231(a)(6).

Petitioner does not contest the Government's authority to order his removal from the United States. Petitioner seeks habeas corpus relief from what he asserts is, in effect, indefinite detention, because he cannot be returned to Sudan for political reasons.

**The Zadvydas Case**

After the Petition in this case was filed, the Supreme Court addressed the precise issue of whether immigrants may be detained indefinitely pending deportation. Zadvydas v. Davis, – S.Ct. –, 2001 WL 720662 (June 28, 2001). The Court concluded that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. To avoid the constitutional difficulty, the Court read an implicit limitation into §1231(a)(6), and determined that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Id. If removal of the alien is not reasonably foreseeable, a court should hold his continued detention unreasonable and order his release, which, of course, may be conditioned on any of the various forms of supervised release that may be appropriate under the circumstances. Id.

The Supreme Court determined that six months is a presumptively reasonable period of detention. "After this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would

have to shrink." Id.

In Zadvydas, the Supreme Court set forth a new standard to be used in habeas cases for the determination of when detention is appropriate under 8 U.S.C. §1231(a)(6). This new standard is immediately relevant to Petitioner's case. It is to be presumed that the INS will enact new regulations in accordance with the Supreme Court's interpretation of §1231(a)(6), and review the detention of aliens such as Petitioner, who are being detained under what is now demonstrated to be an incorrect standard.

**Petitioner's Case**

If this case were presented as a direct appeal from the INS's decision to detain Petitioner, it seems clear that the appropriate result would be remand to the agency for application of the new legal standard. See Tomas v. Rubin, 935 F.2d 1555 (9th Cir. 1991)(remand to agency appropriate to allow agency to apply new standard); Montana Wilderness Ass'n Inc. v. United States Forest Service, -- F. Supp.2d --, 2001 WL 568469 at *7 (D. Mont. May 21, 2001)("Ordinarily, the remedy in a lawsuit involving an administrative agency's actions is remand to the agency. This approach acknowledges the agency's unique expertise and its responsibility to execute the law by allowing the agency to reformulate its objectives and exercise its discretion in planning to fulfill them.") Remand is generally required when an intervening event, such as a new legal decision, occurs which may affect the validity of the agency action. SKF USA Inc. v. FAG Kugelfisher Georg Schafer AG, -- F.3d --, 2001 WL 567509 at *4 (Fed. Cir. May 25, 2001).

However, this case is before us on a Petition for Writ of Habeas Corpus under 28 U.S.C. §2241. Habeas relief is available to a prisoner who is in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§2241(c)(3). The Court is presented with a situation where an agency made the determination to imprison an alien without considering whether his removal is reasonably foreseeable, thereby applying a standard which is inconsistent with the Supreme Court's interpretation of a federal statute. In other words, the INS applied a procedure contrary to federal law when determining if Petitioner should be detained.

Clearly, some action needs to be taken in Petitioner's case to determine whether or not his detention is proper under the new standard. We conclude that the INS should have the opportunity to apply its expertise to determine if Petitioner's detention is appropriate under the Zadvydas standard. This would be the likely result if a direct appeal of the detention Order were permitted, and no different result should follow by reason of the fact that the issue is presented under the habeas corpus procedures.

When considering a habeas petition, the Court has the power to "dispose of the matter as law and justice require." 28 U.S.C. §2243. See also Levy v. Dillon, 415 F.2d 1263, 1265 (10th Cir. 1969)("if, at the time the habeas corpus petition is considered, justice requires relief for the applicant, a federal court possesses power to grant any form of relief necessary to satisfy the requirement of justice."). "In a habeas case, no less than any other, the remedy must be commensurate with the harm." Orndorff v. Lockhart, 906 F.2d 1230, 1233 (8th Cir. 1990)(granting habeas relief and giving State option to conduct a new sentencing proceeding).

The Supreme Court "has repeatedly stated that federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court." Hilton v. Braunskill, 481 U.S. 770, 775 (1987) (citations omitted). This rationale also applies to cases where a federal agency

uses a detention procedure which is found to be contrary to statute or regulation. See Luther v. Molina, 627 F.2d 71, 76-77 (7th Cir. 1980); Theriault v. Quinlan, 614 F. Supp. 209 (S.D.N.Y. 1985)(granting habeas petition and remanding to Parole Commission for reconsideration of petitioner's sentence in accordance with federal statute).

In remanding this case to the INS, we also recommend that the District Court expressly decline to either grant or deny the instant Petition, so as to avoid unintentionally creating a procedural obstacle to any future challenge by Petitioner of his detention by the INS. Successive habeas petitions are restricted by 28 U.S.C. §2244(a), which provides:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

The remainder of §2244 contains further instructions on dealing with these so-called "second or successive" habeas corpus applications.

Once the INS has made a determination under the new standard as to whether or not to detain Petitioner, Petitioner may file a new Petition, if appropriate, requesting that the Court review the agency's decision on remand under the new standard established by the Supreme Court. A new collateral challenge to Petitioner's detention would not be a "second or successive" petition subject to the restrictions of §2244. By expressly declining to rule on the Petition currently before the Court, the Court would make it clear that it is not determining the legality of Petitioner's detention. Petitioner should retain the ability to challenge his detention, if necessary, after the INS determines if he should be detained under the proper standard. If, after remand, the INS continues to hold

Petitioner under the Zadvydas standard, such custody will not be a detention the legality of which has been determined on a prior application for a writ of habeas corpus. See 28 U.S.C. §2244(a). See also Stewart v. Martinez-Villareal, 523 U.S. 637, 643-44 (1998)(new petition not considered "second or successive" because merits of claims not considered in earlier petition); Barapind v. Reno, 225 F.3d 1100 (9th Cir. 2000)(second habeas petition was not "second or successive" for purposes of §2244, because claim arose from actions taken by BIA on remand after initial successful habeas petition).

## RECOMMENDATION

For the reasons set forth above, it is recommended that the matter be remanded to Respondent for prompt consideration under the standard set forth in Zadvydas v. Davis, – S.Ct. –, 2001 WL 720662 (June 28, 2001).

Dated: July 25, 2001

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **August 10, 2001** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500